## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

**UNITED STATES OF AMERICA**

**vs.**                                           **Case No. 2:07-cr-116-FtM-66NPM**

**JEFFREY DINKEL**

_____/

### REMAINING OBJECTIONS TO THE AMENDED FINAL PSR (Doc. 82)

Jeffrey Dinkel, through counsel, respectfully presents the following objections to the amended, final presentence report filed in this matter of Doc. 82.

The government's position as to each objection is unknown.

### GUIDELINES OBJECTION: Mr. Dinkel should score +4 at Paragraph 27

A. Background

The Addendum to the final PSR filed as Doc. 57 on September 30, 2019, reports Mr. Dinkel objected to the +5 enhancement at USSG § 2G2.2(b)(7)(D).  *See* pages 60-61 of Doc. 57.  The Office of Probation nonetheless maintained Mr. Dinkel was properly scored with the five level enhancement.  *Id.*

The Addendum to the amended, final PSR filed as Doc. 82 on July 10, 2020, contains defense counsel's objection letter of December 10, 2019.  *See* pages 70-73 of Doc. 82.  As the Office of Probation continues to insist Mr. Dinkel has been properly scored with the +5 enhancement notwithstanding defense counsel's December 10 letter, *see* pages 61-62 of Doc. 82, Mr. Dinkel persists with his objection to the +5 enhancement.

**PLEASE TAKE NOTICE** this objection responds solely to the Probation Office's justification for the +5 enhancement appearing at pages 61-62 of Doc. 82.  Mr. Dinkel proceeds

with the understanding that the Office of Probation is no longer advancing the argument appearing at pages 60-61 of Doc. 57.

**PLEASE TAKE FURTHER NOTICE** that this filing supplements defense counsel's December 10 letter found in the Addendum at pages 70 to 73 of Doc. 82. As such, while a copy of the December 10 letter is not annexed to this document as an exhibit, the letter is respectfully incorporated herein to constitute Mr. Dinkel's entire argument in opposition to the +5 enhancement at USSG § 2G2.2(b)(7)(C).

B. Argument

The parties agree that 308 images of child pornography were located in Mr. Dinkel's temporary internet files. *See* PSR ¶ 15. Adding this figure to the two videos containing child pornography – recordings located by law-enforcement officers somewhere other than unallocated space – the aggregate sum amounts to 458 images.[1] *See* PSR at pg. 72 & ¶ 27 (enumerating "at least two child pornography videos").

Mr. Dinkel concedes he possessed these 458 images of child pornography. As such, Mr. Dinkel necessarily admits that the +4 enhancement at USSG § 2G2.2(b)(7)(C) applies.

But the Office of Probation urges there are more images to count.

In addition to the 458 images that Mr. Dinkel admits he possessed, the Office of Probation astonishingly insists the "approximately 441 child pornographic images in unallocated and hiberfil space" identified at PSR ¶ 15 were also possessed by Mr. Dinkel notwithstanding the Probation Office's assertion in the Addendum to the PSR at page 61 of Doc. 82 that:

> Appeals courts [sic] decisions in previous cases have defined unallocated space as 'space on a hard drive that contains deleted data, usually emptied from the operating system's trash or recycle bin folder, that cannot be seen or accessed by the user without the use of forensic software. Such space is

---

[1] Each video is considered to contain 75 images. *App. Note 6(B)(ii)* of USSG § 2G2.2.

> available to be written over to store new information.  Even if retrieved, *all that can be known about a file in unallocated space (in addition to its contents) is that it once existed on the computer's hard drive.  All other attributes – including when the file was created, accessed, or deleted by the user – cannot be retrieved*.' (quotation marks in original) (emphasis added).

Applying the Probation Office's explanation of unallocated space, how is the United States to prove Mr. Dinkel possessed a computer file for which the date of creation, the date of access and the date of deletion are unknowable?[2]

The Office of Probation answers with *United States v. Shiver,* 305 F. App'x. 640 (11th Cir. 2008).

In *Shiver, supra,* at 641, the defendant was convicted of possession of child pornography at trial.  The contraband was located by authorities on the defendant's computer.  *Id.*  The defendant in *Shiver* claimed the district court erred in overruling his motion for acquittal on the basis that the government failed to prove he possessed child pornography.[3]  *Id.*  According to the Office of Probation:

> The defendant in *Shriver* [sic] argued that images in unallocated space were deleted, inaccessible, and therefore could not be considered knowingly possessed.  In the *Shriver* [sic] decision, the Court rejected that argument and held that the defendant had, at some point, possessed the images by deleting them, citing *United States v. Romm,* 455 F.3d 990, 999 (9th Cir. 2006).

---

[2] Because Mr. Dinkel concedes he possessed 458 images of child pornography and the United States maintains Mr. Dinkel possessed at least 600 images, the government has the burden to prove this greater amount with reliable and specific information and by a preponderance of the evidence.  *United States v. Bernardine,* 73 F.3d 1078, 1080 (11th Cir. 1996); *United States v. Lawrence,* 47 F.3d 1559, 1566 (11th Cir. 1995); *see, e.g., United States v. Agis-Meza,* 99 F.3d 1052, 1055 (11th Cir. 1996) (government has burden of production and persuasion on disputed fact that enhances advisory range of punishment).

[3] As such, *Shiver* is a legal sufficiency case where the defendant argued he was innocent because the government failed to prove he possessed **_any_** image.  In the matter at bar, because Mr. Dinkel has admitted he possessed child pornography, there is no issue of legal sufficiency.  Along the same line,  while the defendant in *Shiver* had the burden to prove legal insufficiency -- *United States v. Salamanca,* 990 F.2d 629, 637 (D.C. Cir. 1993) *cert. denied* 510 U.S. 928 (1993) (*relying on Jackson v. Virginia,* 443 U.S. 307, 319 (1979)) -- in the instant case, the government must prove Mr. Dinkel possessed more than 458 images. *See* Footnote 2, *supra.*

In concluding the government presented legally sufficient evidence that the defendant in *Shiver* possessed images of child pornography located in unallocated space, the Eleventh Circuit relied on statements made by the defendant and on expert testimony refuting defense claims that malware, rather than the defendant himself, was the source of the child pornography. *Shiver, supra,* at 643. In other words, because all that can be known about images in unallocated space is that they were once on the hard drive, to present a legally sufficient case of possession of images found in unallocated space the government also presented (i) expert testimony rebutting defense theories and (ii) inculpatory statements made by the defendant.[4]

In the matter at bar, "Dinkel admitted he paid for subscriptions to numerous child pornography websites from his personal computer." *See* PSR ¶ 12. Mr. Dinkel also located images of child pornography on the internet by using search terms that would likely return these types of images. *Id.* As all images were viewed from websites, all of them would necessarily have cached in Mr. Dinkel's temporary internet files.

At PSR ¶ 12, Mr. Dinkel also told law enforcement that he would save images in "My Documents" and later delete them. Critically, however, no images were found in "My Documents." *See* PSR ¶ 15. Because "all that can be known about a file in unallocated space (in

---

[4] Perhaps here the incompatibility of *Shiver* with the question at bar becomes most conspicuous. While the defendant in *Shiver* and Mr. Dinkel each deny possession of images located in unallocated space, the commonality ends there. Mr. Dinkel not only pleaded guilty to possession of child pornography, but the forensic examination of his computer locates images of child pornography precisely where Mr. Dinkel's statements to agents indicated such images would be found. Therefore, Mr. Dinkel concedes possession of these images, but denies possession of any image found in unallocated space. Unlike Mr. Dinkel, after the defendant in *Shiver* denied possession of child pornography, he failed to carry his burden on appeal to prove no reasonable construction of the evidence permitted a finding that he possessed child pornography. *See, e.g., United States v. Chahla,* 752 F.3d 939, 945 (11th Cir. 2014). Put most rudimentarily, the issue in *Shiver* deals with criminal liability while the issue at bar deals with sentencing accountability. *See App. Note 1* of USSG § 1B1.3.

addition to its contents) is that it once existed on the computer's hard drive[,][5] it is impossible to discern if any or all of 441 images were once located in "My Documents" and then deleted.

If the 441 images found in unallocated space are excluded from the guideline calculation, then Mr. Dinkel must have possessed less than 600 images and could not score as +5 at USSG § 2G2.2(b)(7)(D).   *See* PSR ¶¶ 15, 27.

As Mr. Dinkel has admitted to possession, and as all of the evidence concerning Mr. Dinkel's possession coincides with the 458 images located outside of unallocated space, what evidence exists to conclude Mr. Dinkel possessed any of the 441 images for which there is no creation date, no access date and no delete date?  *United States v. Keefer,* 405 F. App'x. 955, 958 (6th Cir. 2010) (*citing United States v. Shafer,* 199 F.3d 826, 830-31 (6th Cir. 1999)) (because Court can only consider relevant conduct in the determination of sentencing enhancement, and because government must show defendant "knowingly possessed or knowingly accessed with intent to view" images,[6] and because images stored in unallocated space merely "were *present* on a computer at some point[,]" images in unallocated space did not count under USSG § 2G2.2(b)(7)) (emphasis in original); *see, e.g., United States v. Sepulveda,* 115 F.3d 882, 890 (11th Cir. 1997) (fact determination permitting a more severe sentence may not be premised in speculation); *see also United States v. Martinez,* 584 F.3d 1022, 1027 (11th Cir. 2009); *Bernardine,* 73 F.3d at 1082 ("[w]here a defendant objects to an allegation in a PSI and offers evidence at a sentencing hearing to rebut the basis for the allegation, courts may not simply accept a conclusion in the PSI without any evidentiary support").  Put differently, as Mr. Dinkel has

---

[5] *See* page 61 of Doc. 82 (the response of the Probation Office to Mr. Dinkel's objection).

[6] As the instant offense terminated in July 2007, the version of 18 U.S.C. § 2252(a)(4)(B) at bar does not permit conviction for the knowing access of child pornography with the intent to view.  Instead, the version of 18 U.S.C. § 2252 (a)(4)(B) at bar criminalizes only knowing possession.  *See Shiver,* 305 F. App'x. at 642, n.4.

already admitted he possessed child pornography and child pornography was located where Mr. Dinkel informed it would be, upon what basis does the government prove Mr. Dinkel also possessed computer files of which "[a]ll other attributes including when the file was created, accessed, or deleted by the user – cannot be retrieved[?]"

**FACTUAL OBJECTION: Paragraph 66 should be restored**

This objection deals with the deletion of an entire paragraph from the final PSR.

Realizing Mr. Dinkel will first be classified by BOP and then participate in sex-offender treatment during and after service of whatever term of incarceration this Court shall impose, defense counsel sent AUSA Viacava and Officer Primrose a letter on July 10, 2019 – ten days after the initial disclosure of the PSR.[7]   This letter, annexed hereto as ***"Exhibit A,"*** contained two DVD recordings that corroborated Mr. Dinkel's statements to the Probation Office that he travelled repeatedly to the Dominican Republic for missionary work.[8]  Quoting from ***"Exhibit A:"***

> Please let me know if you disagree.  If not, then please add to the final PSR that Mr. Dinkel has provided video corroboration of his vocational efforts in the D.R. (¶ 64) to include corroboration that he 'photographed the children for sponsorship programs based out of the United States.'

---

[7] The initial disclosure of the PSR was filed on July 1, 2019, as Doc 46.

[8] Sadly, the Dominican Republic is, and has been, a travel destination for child molesters.  *See* United States Department of State, *2019 Trafficking in Persons Report: Dominican Republic* online at *state.gov/reports/2019-trafficking-in-persons-report-2/Dominican-republic/* (last visited September 14, 2020).  As such, federal agents investigating Mr. Dinkel for possession of child pornography questioned Mr. Dinkel about his travels to the Dominican Republic.  Mr. Dinkel agreed to speak with these agents. *See* PSR ¶ 11.  Mr. Dinkel denied inappropriate conduct regarding children in the Dominican Republic. *See* PSR ¶ 13.  Mr. Dinkel told the agents he performed missionary work in the Dominican Republic for a local church.  *Id.*  Part of his work went toward school construction in the Dominican Republic and part of that work involved photographing children for use of their images in sponsorship programs.  *Id.*  As the Office of Probation deemed it appropriate to include in the PSR that Mr. Dinkel (i) informed agents his frequent travel to the Dominican Republic was for vocational and not deviant purposes, (ii) denied molesting children in the Dominican Republic but (iii) admitted to taking photographs of children in the Dominican Republic for sponsorship purposes, it seems appropriate to Mr. Dinkel that independent corroboration of these statements -- particularly corroboration from that same local church where Mr. Dinkel claimed affiliation -- is equally appropriate for inclusion.

Finally, each video was produced under the explicit auspices of the Saint Michael Lutheran Church in Fort Myers. Should you wish to examine the original DVDs, I have maintained them.

Clearly neither Officer Primrose nor AUSA Viacava found Mr. Dinkel's request troubling as Paragraph 66 of the final PSR at Doc. 57 reads:

> The defendant, through counsel, provided two videos which appear to corroborate the defendant's account of his mission work in the Dominican Republic, including the photographing of children for sponsorship programs based out of the United States. The videos credit Saint Michael Lutheran Church of Fort Myers as the organization supporting the missionary work.

Because Paragraph 66 appeared in the final PSR, the Office of Probation necessarily deemed it appropriate for inclusion under Fed. R. Crim. Pro. 32(d)(1) and/or 32(d)(2). Defense counsel, very obviously, supported inclusion of Paragraph 66. The government had no objection to its inclusion. *See* Doc. 57 at pg. 60.

Yet, without explanation, Paragraph 66 of the final PSR disappears from the amended, final PSR filed as Doc. 82.

Because there was accord with the parties and the Office of Probation that Paragraph 66 was a proper component of the final PSR, it is respectfully submitted that it must be restored in the amended, final PSR.

Additionally, and assuming *arguendo* there no previous accord among the parties as to the propriety of Paragraph 66, if a sex offender's statement that he did not repeatedly visit a foreign locale renown for child molestation for deviant purposes is deemed a material component of a presentence report, then corroboration of that same statement it equally material. *See Generally* 1975 Committee action notes to Fed.R. Crim.Pro. 32(c)(3)(A) ("[s]ince the presentence report is to be used by the court in imposing sentence and since the consequence of any significant

inaccuracy can be very serious to the defendant, the Committee believes that it is essential that the presentence report be completely accurate in every material respect"); 1974 commentary to Fed. R.Crim. Pro. 32(c)(1) (presentence report is of great value for correctional purposes).

Respectfully submitted,

JAMES SKUTHAN
ACTING FEDERAL DEFENDER

/s/ James Lappan
James Lappan
Florida Bar No. 0160792
Assistant Federal Defender
2075 West First Street
Fort Myers, Florida 33901
Telephone: 239-334-0397
Fax: 239-334-4109

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of August, 2020 a true copy of the foregoing was electronically filed and served electronically to Yolande Viacava, Esq., Office of the United States Attorney, 2110 First Street, Fort Myers, Florida.

/s/ James Lappan
James Lappan
Assistant Federal Defender

8